**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JAMES WILLIAMS**                                                                                                         **Plaintiff**

**VERSUS**                                                             **CIVIL ACTION NO: 1:04CV299-M-D**

**CITY OF AMORY, MISSISSIPPI,
and JOHN BISHOP**                                                         **Defendants**

_____

**ORDER**

This cause comes before the court on the motion of defendants City of Amory, Mississippi and John Bishop for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff James Williams has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

On October 31, 2003, at 11:27 a.m., a 911 caller notified the City of Amory emergency dispatch service that an intoxicated individual driving a white Chevrolet truck had pulled into Knight's Drive-In in Amory. Amory Police Officers John Bishop and Bryan Chandler were dispatched to the scene, and Bishop arrived at the location within a few minutes. Shortly after arriving, Bishop observed a white Chevrolet truck backing away from Knight's Drive-In and into the street. Bishop asserted in his statement that he pursued the truck after observing how its driver almost hit another vehicle on the street. While Bishop was catching up with the white truck, the truck's driver entered directly into the flow of traffic of nearby Highway 278 without stopping at the stop sign. According to Bishop's statement, this act nearly caused a second collision. Bishop was able to get directly behind the white truck with his blue lights and siren activated.

The driver of the truck continued on Highway 278 and proceeded to drive off the side of the road and then back into oncoming traffic. Finally, the driver pulled to the side of the road and stopped. At 11:53 AM, Bishop pulled his vehicle in behind the truck, and Chandler pulled in behind Bishop's patrol car. After advising the dispatcher of his location, Bishop exited his vehicle and approached the driver's side of the truck. Bishop began speaking with the driver, Plaintiff James Williams. Bishop asserts that he found Williams to be incoherent and slow in speaking. Bishop asked Williams to get out of his truck, and Bishop asserts that Williams was staggering and swaying as he did so.

Bishop did not smell any alcohol, so he asked Williams whether he had taken any medication. Williams informed Bishop he had taken blood pressure medicine. During this conversation, Williams could not stand on his own, and he had to use his vehicle for support. Consequently, Bishop directed Chandler to conduct a field sobriety test. In conducting the field sobriety test, Chandler made observations of Williams' eyes, and he had him perform a walk and turn test. Williams could not complete the testing. Officer Chandler observed that Williams had lack of smooth pursuit with his eyes and that he had a difficult time keeping his balance and following instructions. Chandler did not have Williams complete the full sobriety test as he found Williams' condition was incoherent and unstable. At some point during the traffic stop, a citizen named Jerry McClarty arrived and represented that he knew Williams. McClarty told the officers that Williams did not drink and that he did not take drugs. Nevertheless, Bishop decided to arrest Williams. Williams was taken into custody and transported to the Amory Police Department. McClarty was permitted to take custody of Williams' truck.

Bishop arrived at the Amory Police Department at 12:07 p.m. While at the police station,

Bishop completed the arrest paperwork which included charges for reckless driving and driving under the influence–other substance. As to the driving under the influence charge, Williams was not charged with driving under the influence of intoxicating liquor, but rather under the influence of "any other substance" which impaired his ability to operate a motor vehicle. At the time, the identity of this "other substance" was unknown. Williams' personal property was inventoried and he was placed in a telephone room so he could make a call. Later that afternoon, the dispatcher contacted Amory Police Chief Ronnie Bowen and advised him that someone wanted to take an inmate to the doctor. Chief Bowen reviewed the paperwork on Williams and then spoke to Larry Allred, Williams' former brother-in-law. Allred told Chief Bowen that he thought something was wrong with Williams and he wanted to take him to the doctor. Chief Bowen agreed to release Williams to Allred and had Allred sign a liability release. Williams was then released to Allred's custody. According to the Complaint and supporting medical records, Williams was taken Gilmore Memorial Hospital. Williams' attending physician was told the following:

> This 58-year-old white male was in his usual good health this morning when he got [sic] and went to work. He worked out in a hay field, driving a tractor and picking up round bails of hay, went to Pickle's, a local restaurant, to eat lunch. When he got there, he was not acting normally according to second hand reports. He had apparently [sic] difficulty getting words out and trying to tell the waitress what he wanted to eat. He dropped his glass of tea twice and had trouble with coordination. Subsequently when he backed out to leave he either hit car [sic] or almost hit a car and was stopped by the police and carried apparently to the police station. His former brother-in-law was called and brought him to the office and that is where I saw him. Mr. Williams does not drink any alcohol and has always been in good health other than high blood pressure. He is talking okay now and does not remember any numbness or tingling in any focal area such as his arm or leg. He has never had a stroke. He does have high blood pressure and is taking medicine regularly for that. He does not smoke and does not have any history of heart disease. . . . His speech is normal now and he has not had any visual

problems.

His physician's initial impression was that Williams suffered from a transient ischemic attack and hypertension. Williams stayed in the hospital for observation and testing until November 3, 2003. Upon his discharge, it was thought Williams suffered from an episode of "altered mental status secondary to transient ischemic attack (TIA) probably associated with hypertension." Shortly thereafter, Chief Bowen learned Williams had a medical condition which led to his reckless driving and arrest. On November 5, 2003, upon a motion by the City prosecutor, the DUI–other substance charge was dismissed.

For Williams' part, he has a very limited memory of the events of October 31, 2003. Williams remembers pulling his truck up to Knight's Drive-In, but he does not remember anything from his visit to Knight's Drive-In. Williams does not remember leaving the restaurant or the actions he took before the traffic stop. As for the traffic stop, Williams remembers the officer that stopped him, and he has a vague memory of being required to walk a line. The only memory Williams has of his temporary detention at the Amory City Jail is seeing bars and an officer letting him out of a cell. Williams' next memory is at the emergency room. Consequently, Williams does not dispute the statements of Bishop or Chandler regarding his actions or their observations of him during the traffic stop.

The aforementioned facts are taken largely from defendants' brief, and plaintiff does not dispute the essentials of defendants' description of the events involving the automobile stop. In his description of facts, however, plaintiff adds the following:

> McClarty and others present on the scene informed Officers Bishop and Chandler that Mr. Williams did not drink nor do drugs. These people informed the officers that Mr. Williams was suffering from a medical condition, not as a result of drugs or alcohol. Mr. McClarty requested that he be allowed to take Mr. Williams

home or to the doctor, but Officers Bishop and Chandler refused. Officer Bishop did not smell any intoxicating beverage on Mr. Williams. Officer Bishop's search of Mr. Williams' truck found no drugs, no contraband and no precursors or drug paraphernalia. Bishop testified that based on his training, when he did not smell alcohol, Mr. Williams' impairment "had to have been another.... substance." ...

Despite the warning given the police officers at the scene of the traffic stop that Mr. Williams was suffering medically and not impaired due to alcohol or drugs, Officer Bishop took Mr. Williams to jail. Police Chief Bowen testified that his officers were not trained to recognize a driver with a medical condition causing impairment, nor are they trained as medical first responders. Bishop testified that he had no medical or EMT training and had never been trained to identify medical problems. The jail personnel in Amory are also not trained to identify or treat medically ill inmates. Even had they been, Officer Bishop never advised anyone in the jail that Mr. Williams may be suffering from a medical condition. As a DUI inmate, Mr. Williams was booked, allowed to make a call, given field sobriety tests and put in a cell. The booking included having his fingerprints taken. Chief Bowen testified that Mr. Williams was given no medical treatment nor medical examine when he was taken to the jail. Chief Bowen testified that it is department policy to hold an impaired person for four hours.

While Mr. Williams was in the jail, his sister, Pat Allred, called the jail on his behalf. Mrs. Allred was informed by jail personnel that her brother had been arrested for driving under the influence. Mrs. Allred informed them that her brother did not drink or do drugs and there must be something medically wrong with him. She also informed jail personnel that Mr. Williams had high blood pressure. On a second call to the jail in an attempt to obtain her brother's release, someone with the Amory Police Department informed Mrs. Allred that Mr. Williams' blood pressure had been checked and had registered normal. In fact, she was assured twice that Mr. Williams had been treated medically and his blood pressure had been checked. Mrs. Allred then contacted her ex-husband, Larry Allred, and asked him to go to the jail to see if he could get help for Mr. Williams.

On a third phone call to the Amory Police Department, in an attempt to obtain medical treatment for her brother, Mrs. Allred was informed by jail personnel that Mr. Williams was "definitely under the influence and that if I came down there to attempt to have him released, I would likely be arrested and thrown in jail with him." Mr. Williams' brother-in-law, Larry Allred, was able to obtain his release at 2:10 p.m. When Mr. Allred obtained Mr. Williams' release from jail, it was obvious that Mr. Williams needed medical attention. As noted previously, Mr. Williams was diagnosed with TIA. While Mr. Allred was obtaining Mr. Williams' release, Chief Bowen informed him "I look at so many I don't pay a lot of attention to them," referring to inmates. Plaintiff was admitted to the hospital on October 31, 2003 and released on November 3, 2003.

# ANALYSIS

Based upon a review of the aforementioned facts, this court concludes that plaintiff has arguably managed to establish genuine issues of fact as to whether certain Amory police officers acted negligently in this case. Unfortunately for plaintiff, however, all of the federal and state causes of action which he asserts in this case require proof of a heightened level of misconduct and/or proof that the City itself, or one of its official policymakers, committed Constitutional violations. In the court's view, plaintiff is unable to make such a showing.

More specifically, the court concludes that plaintiff is unable to establish fact issues regarding the City of Amory's liability under 42 U.S.C. § 1983 due to his inability to demonstrate that the alleged misconduct in this case was the result of a municipal policy or custom as required by *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). In the court's view, plaintiff has failed to offer evidence that the City had a municipal policy to deny medical care to ill suspects sufficient (such as through inadequate training of officers) sufficient to meet the extraordinarily high standards set forth by the U.S. Supreme Court. In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 109 S.Ct. 1197 (U.S. 1989), the Supreme Court held that a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference as to its known or obvious consequences ... a showing of simple or even heightened negligence will not suffice." In light of this extraordinarily high standard of proof, the Supreme Court concluded in *Canton* that an "inadequate training" claim could be the basis for § 1983 liability in "limited circumstances." *Id*., at 387, 109 S.Ct., at 1204. This court similarly concludes that plaintiff has failed to offer proof that Chief Bowen himself, acting in his capacity as official law enforcement

policymaker for Amory, committed a Constitutional violation in this case in his capacity as official policymaker for the City of Amory in law enforcement matters. *Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Accordingly, plaintiff is unable to establish genuine fact issues regarding the City's potential liability in this case for § 1983 violations.

In the court's view, plaintiff appears to recognize that his proof in this case fails to meet the required standard of proof in § 1983 cases, judging by the fact that his complaint asserts that "plaintiff makes a good faith argument that the *Monell* doctrine should be reconsidered and the City of Amory should be liable on a *respondeat superior* basis." This court can not fathom that plaintiff would seriously expect this court to "reconsider" *Monell*, which has been the cornerstone of the U.S. Supreme Court's § 1983 jurisprudence for decades. While certain lawsuits may legitimately be filed based upon a realistic expectation that existing authority might be held distinguishable, this is clearly not such a case. There exists no basis for the imposition of liability against the City of Amory under § 1983, and plaintiff's arguments in this regard lack merit.

As to his claims against Bishop individually, the court concludes that plaintiff is unable to overcome Bishop's qualified immunity defense in this case. Plaintiff acknowledges that "the doctrine of qualified immunity protects all but the plainly incompetent or those who knowingly violate the law," *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) and plaintiff argues that the facts of the case establish that Bishop meets both requirements. This court does not agree. In support of his argument that the required level of misconduct was present, plaintiff argues that:

> Several people present at the scene of the traffic stop informed Officer Bishop and/or Officer Chandler that Mr. Williams did not drink or do drugs. The officers were also informed that it was likely that Mr. Williams was suffering from a medical problem. Further, Officer Bishop testified at his deposition that he smelled no intoxicating beverage and found no drugs or other contraband after searching Mr. Williams' truck.

7

While the court does not deny that plaintiff's arrest and detention could and should have been handled better, Bishop's conduct in this case simply does not rise to the level of a knowing violation of the law or "plain incompetence."

In the court's view, defendant makes persuasive arguments as to why plaintiff is unable to meet his heightened burden of proof in this case, arguing as follows:

> After arriving at the restaurant, Williams was observed backing into oncoming traffic, running a stop sign, and driving erratically. After Williams finally pulled over, Officers Bishop and Chandler observed Williams in an incoherent state. He was swaying, he had to use his truck to support himself, he had difficulty responding to their questions, and he could not complete a field sobriety test. Williams does not dispute any of these facts. Therefore, at the time of his stop, it is undisputed James Williams was driving recklessly. It also is undisputed Williams was driving a motor vehicle in an impaired condition. While Bishop did not smell alcohol or find any drugs or drug paraphernalia inside Williams' truck, he reasonably believed Williams was under the influence of some substance. In this case, there was reasonable suspicion to justify the traffic stop. Williams was driving erratically and he nearly caused two collisions. These facts alone are grounds for arrest. ... His subsequent inability to complete a field sobriety test, along with the observations of the police officers concerning Williams' incoherent condition, supplied additional probable cause for his arrest.

In the court's view, the aforementioned facts clearly support a conclusion that plaintiff is unable to create fact issues as to anything other than, at the very most, simple negligence in this case. While a showing of possible negligence will permit a plaintiff to survive a motion for summary judgment in many contexts, this case is not one of them.

Plaintiff's inability to demonstrate anything more than simple negligence also defeats his claims under the Mississippi Tort Claims Act. Pursuant to the MTCA, the City of Amory and Officer Bishop acting within the scope of his duties may not be liable for a claim:

> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;

Mississippi Code Annotated § 11-46-9(1)(c). Plaintiff argues that Bishop's actions in this case

showed "reckless disregard of [his] safety and well-being," but, to reiterate, the court concludes that Bishop's actions in this case demonstrated, at the most, simple negligence, and such negligence is insufficient to establish either governmental or individual liability under the Mississippi Tort Claims Act in cases arising out of "the performance or execution of duties or activities relating to police or fire protection." The court therefore concludes that plaintiff has failed to establish fact issues regarding his right to recover under his federal or state claims, and this action is therefore due to be dismissed.

In light of the foregoing, it is ordered that defendants' motion [24-1] for summary judgment is granted.

A separate judgment will be issued this day, in accordance with Fed. R. Civ. P. 54.

**SO ORDERED**, this the 12th day of July, 2006.

                                                  **/s/ Michael P. Mills**
                                                **UNITED STATES DISTRICT JUDGE**